UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALEX OSBORNE, LAUREL DOWNS,
DOUGLAS MELANCON, CANDICE CROVETTO,
ALBERT SMITH, SAVANNA BEALS,
VIRGINIA HUFFY, PATRICK HOLCOMB,
JERRY CAIN, SAM NEWMAN, DIANE CORKERN,
CHRISTOPHER WELLS, MICHAEL MATRANA,
BARRETT PHILLIPS, ALDO CASTRO,
DANIEL OSORIO, ELVIN CANALES,
KAMILAH HAYES, SHARON JACKSON,
THOMAS HAYNE, JOHN LYON,
KEVIN GREEN, OLGA LOPEZ,
BRADY MORGAN, HAILEY OSBORNE,
ROGER BOUDREAUX, MARCAS DESELLE,
WARLENE CRAIG, WILLIAM HUMPHREYS,
STEPHANIE MASSARINI, MICHAEL ROBERTS,
SANDRA CHANEY, BRITTANY THRASH,
HEATHER NIELSEN, DENNISON ADAMS,
ASHLEY TORRES, ELPIDIA CASSEUS,
LEON GAUDIN, and CURTIS FLOURNOY

VS.

POSIGEN DEVELOPER, LLC,
POSIGEN, PBC, and POSIGEN OF LA, LLC

COMPLAINT

NOW INTO COURT, through undersigned counsel, come Petitioners, ALEX OSBORNE, LAUREL DOWNS, DOUGLAS MELANCON, CANDICE CROVETTO, ALBERT SMITH, SAVANNA BEALS, VIRGINIA HUFFY, PATRICK HOLCOMB, JERRY CAIN, SAM NEWMAN, DIANE CORKERN, CHRISTOPHER WELLS, MICHAEL MATRANA, BARRETT PHILLIPS, ALDO CASTRO, DANIEL OSORIO, ELVIN CANALES, KAMILAH HAYES, SHARON JACKSON, THOMAS HAYNE, JOHN LYON, KEVIN GREEN, OLGA LOPEZ, BRADY MORGAN, HAILEY OSBORNE, ROGER BOUDREAUX, MARCAS DESELLE, WARLENE CRAIG, WILLIAM HUMPHREYS, STEPHANIE MASSARINI, MICHAEL ROBERTS, SANDRA CHANEY, BRITTANY THRASH, HEATHER NIELSEN, DENNISON ADAMS, ASHLEY TORRES, ELPIDIA CASSEUS, LEON GAUDIN, and CURTIS FLOURNOY, who respectfully represent as follows:

**Parties**

1. Petitioners are persons of the full age of majority. At all relevant times, Defendants employed Petitioners in the State of Louisiana.
2. Defendant PosiGen Developer, LLC ("PosiGen Developer") is a Delaware limited liability company that, at all relevant times, conducted business in Louisiana, including maintaining a facility in St. Rose, Louisiana, and employed Petitioners. Upon information

and belief, PosiGen Developer is an "employer" as defined by the federal WARN Act (employing 100 or more full-time employees) and was the Petitioners' employer for purposes of Louisiana and federal law.

3. Defendant PosiGen, PBC ("PosiGen PBC") is a Delaware public benefit corporation that, at all relevant times, jointly owned, managed, and operated the business of PosiGen Developer.
4. Defendant PosiGen of LA, LLC, is a Louisiana Corporation that, at all relevant times, jointly owned, managed, and operated the business of PosiGen Developer and PosiGen PBC.
5. Based on information and belief, PosiGen PBC exercised control over PosiGen Developer's and PosiGen of LA, LLC's finances and personnel decisions. PosiGen Developer and PosiGen of LA, LLC are "employers" defined by the WARN Act. PosiGen PBC, PosiGen Developer, and PosiGen of LA, LLC operated as a single employer of Petitioners, with common ownership and management, integrated operations, unified personnel policies, and centralized control of employment decisions (including the decision to carry out the mass layoff described below). Accordingly, all entities are jointly, severally, and in solido liable for the obligations to Petitioners described herein.
6. Whenever "Defendants" are referred to collectively in this Petition, it means PosiGen Developer, PosiGen PBC, and PosiGen of LA, LLC, who acted in concert as a single employer at all relevant times.

7. **<u>Jurisdiction</u>**

   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 et seq., the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq.
8. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims — including violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401 et seq., and Louisiana wage payment statutes, La. R.S. 23:631–632 — are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. **Venue**

Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conducted business and employed Plaintiff within the Eastern District of Louisiana.

**Factual Background**

10. Defendants employed Petitioners in the Greater New Orleans area until their sudden termination on or about August 24, 2025, when Defendants ordered a mass layoff and/or shut down their operations without advance notice. This mass layoff affected hundreds of PosiGen employees nationwide (approximately 500 employees in total, including about 100 employees in Louisiana) who were terminated without cause, effective immediately, as Defendants ceased most of their operations.

11. The layoffs of Petitioners and others on or about August 24, 2025, constituted a "mass layoff" and/or "plant closing" as defined by the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq., commonly known as the WARN Act. Specifically, the terminations occurred within 30 days and affected far more than 50 employees at a single site and more than one-third of Defendants' workforce, and also involved the closure of facilities. Defendants at all relevant times employed well in excess of 100 full-time employees, meeting the WARN Act's coverage threshold.

12. Despite the scope of the layoffs, Defendants gave Petitioners no advance written notice of their termination. Petitioners and similarly situated employees were immediately notified of their employment termination, with zero days of prior warning. Defendants did not provide *any* written notice 60 days in advance to Petitioners, employee representatives, or state or local authorities, as required by the WARN Act. The terminations were sudden and without the 60-day notice period mandated by law.

13. In failing to give prior notice, Defendants did not invoke or meet any lawful exception to the WARN Act's notice requirements. Even if Defendants contend that unforeseeable business circumstances or faltering company exceptions applied, Defendants failed to give as much notice as practicable and failed to include a brief statement of the basis for reducing the notification period, as the WARN Act would require in such circumstances. Instead, the terminations were abrupt, with no meaningful notice to Petitioners.

14. Due to the lack of notice, Petitioners received no wages or salary after August 24, 2025, even though, by law, they were entitled to continue receiving pay for a 60-day notice

period. Petitioners' regular pay rate at the time of termination was their final compensation rate, and they received $0 for the 60 days following their layoff. Petitioners also did not receive the value of benefits such as health insurance coverage and retirement plan contributions they would have received had they been given 60 days' notice of layoff.

15. At their termination, Petitioners were enrolled in Defendants' employee benefit plans, including a group health insurance plan and a 401(k) retirement savings plan. Due to the immediate termination of their employment, Petitioners' health insurance coverage through Defendants ceased, and Defendants failed to timely provide Petitioners with notice of their right to continue their health coverage at their own expense under COBRA (the Consolidated Omnibus Budget Reconciliation Act). Petitioners did not receive, within the time required by law, the COBRA election notice informing them that they could elect to continue group health plan coverage. As a result, Petitioners were left without health insurance coverage and could not exercise their right to continuation coverage in a timely manner, causing them to incur or risk incurring out-of-pocket medical expenses that otherwise would have been covered.

16. Petitioners' sudden termination also interfered with their ability to realize certain other benefits. For example, Petitioners did not receive employer contributions to their 401(k) plan for any period after their termination date, and to the extent that any retirement or other benefits were conditioned on continued employment or vesting, Petitioners' involuntary termination deprived them of the opportunity to attain those benefits.

17. Defendants also failed to pay Petitioners sums lawfully due to them at the time of their discharge. Despite the clear requirements of Louisiana law, Petitioners were not timely paid all of their earned wages and accrued benefits after their termination:

- Unpaid final wages: Petitioners had worked and earned wages up to their termination in late August 2025. Defendants did not pay Petitioners their final earned wages on the next regular payday or within 15 days of discharge, as required. Louisiana's final wage statute mandates that upon discharge of an employee, "it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first." Defendants violated this requirement by failing to pay Petitioners' last earned wages by the prescribed deadline.

- Earned commission pay: Petitioners had earned commissions on sales or projects completed before their termination, which, under the terms of employment, were due to be paid. Any commission or incentive compensation earned by an employee by the time of separation is considered an amount due at termination (provided any contractual conditions for earning the commission have been satisfied). Petitioners' commissions were earned and vested before their discharge, and were not subject to any valid modification or forfeiture policy. Defendants failed to pay Petitioners' earned commission compensation after discharge, violating La. R.S. 23:631 and 23:634.
- Other benefits and promised payments: To the extent Petitioners had any other earned benefits (such as expense reimbursements or bonus payments that had become due), Defendants did not pay those amounts. No severance pay of any kind was provided to Petitioners.

13. Petitioners made a demand upon Defendants for the above-described unpaid wages, accrued vacation, commissions, and benefits, but more than three days have elapsed since Petitioners' demands, and Defendants have failed or refused to pay the amounts owed. Accordingly, under Louisiana law, Defendants are liable not only for the unpaid amounts but also for penalty wages and attorney fees. Louisiana Revised Statute 23:632 provides that any employer who fails to comply with the final pay requirements "shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer pays or tenders the amount of unpaid wages due, whichever is the lesser amount of penalty wages." Furthermore, "reasonable attorney fees shall be allowed the laborer or employee by the court" if a well-founded suit for unpaid wages is filed. Defendants' non-payment of wages has subjected them to these statutory penalties.

18. The manner in which Defendants carried out the mass layoff — with no advance warning, no compensation for the notice period, and no timely payment of earned wages and benefits — was extreme and outrageous, and has caused Petitioners serious harm. Petitioners were loyal employees who depended on their jobs for their livelihood. The sudden termination left Petitioners without income or benefits, and the discovery that Defendants had callously disregarded their legal obligations to protect employees from abrupt job loss has caused Petitioners to suffer severe emotional distress. Petitioners have experienced anxiety, stress, and humiliation as a result of losing their jobs with no notice.

They have struggled with the trauma of sudden unemployment and financial insecurity, and have endured mental anguish (including sleeplessness, depression, and worry about how to support themselves and their family). Defendants knew or should have known that such distress would likely result from their actions, yet they consciously disregarded the employees' well-being.

19. All conditions precedent to Petitioners' claims have been performed or have occurred. Petitioners has also provided notice of these claims to the Louisiana Attorney General to the extent required by the Louisiana Unfair Trade Practices Act (as detailed below).

**First Cause of Action: Violation of the Federal WARN Act (29 U.S.C. § 2101 *et seq.*)**

20. Petitioners re-allege and incorporate by reference all allegations in paragraphs 1 through 19 above.

21. Violation of 60-Day Notice Requirement: Defendants' conduct in ordering a mass layoff/plant closing on or about August 24, 2025, without providing advance written notice violated Petitioner's rights under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq*.. The WARN Act provides in pertinent part that "An employer shall not order a plant closing or mass layoff until the end of 60 days after the employer serves written notice of such an order" to affected employees (or their representatives) and to state and local government officials. Defendants failed to give Petitioners (or any appropriate representative or agency) *any* written notice 60 days before terminating Petitioners' employment.

22. Defendants were "employers" subject to the WARN Act's requirements, and Petitioners were "affected employees" entitled to notice. Petitioner's termination on August 24, 2025, was part of a "mass layoff" and/or "plant closing" as defined by 29 U.S.C. § 2101, in that it was a termination (other than for cause or voluntary departure) of a large number of employees within 30 days. Approximately 500 employees, including Petitioners, lost their jobs in this corporate shutdown, easily satisfying the statutory thresholds (e.g. loss of employment for at least 50 employees and 33% of the workforce at a single site, or 500 employees overall). Thus, a 60-day advance notice was required by law.

23. No Excuse or Defense Applies: No valid exception excuses Defendants' failure to give timely notice. Defendants' financial difficulties were known or reasonably foreseeable when notice was required. Even if unforeseen, Defendants did not provide notice *as soon*

*as practicable* nor include a brief statement of reasons for reducing the notice period, as required by 29 U.S.C. § 2102(b)(3) for the "unforeseeable business circumstances" exception. Defendants simply ignored the WARN Act's mandate. Defendants also did not meet the criteria for any other exception (such as the "faltering company" exception for plant closings or natural disaster). In the alternative, if Defendants contend that an exception applies, Petitioners aver that Defendants failed to comply with the conditions of such exception and that no such exception should relieve Defendants of liability.

24. Remedies under WARN: Due to Defendants' WARN Act violation, Petitioners are entitled to recover monetary damages equal to 60 days' worth of pay and benefits. The WARN Act makes an employer who orders a plant closing or mass layoff without the required notice liable to each aggrieved employee for an amount including back pay and the value of benefits for the period of the violation (up to 60 days). Specifically, 29 U.S.C. § 2104(a)(1) provides that any employer who violates the notice requirement "shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for – (A) back pay for each day of violation … and (B) benefits under an employee benefit plan … including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred". Petitioners' "period of the violation" is 60 days (as Defendants gave 0 days notice), and Petitioners were employed by Defendants more than 120 days, so 60 days is less than half their total tenure (thus not exceeding the WARN Act's cap. Petitioner therefore seeks 60 days of back pay at their final pay rate, plus the value of benefits (such as health insurance premiums/coverage costs and retirement contributions) for those 60 days, as allowed by 29 U.S.C. § 2104.

25. The defendants' violation of the WARN Act was willful and not in good faith. Defendants knew of the WARN Act's requirements (as evidenced by issuing a belated WARN notice letter citing "significant financial difficulties" to justify the layoffs), yet failed to comply. Defendants had no reasonable grounds to believe their conduct was not a violation. Consequently, Defendants are not entitled to any reduction in liability, and Petitioners are entitled to full relief under the statute. Petitioners also seeks an award of attorneys' fees and costs in the Court's discretion under 29 U.S.C. § 2104(a)(6), as the prevailing party, because Defendants' failure to give notice forced Petitioners to incur legal fees to vindicate their rights.

**Second Cause of Action: Violation of ERISA § 510 – Interference with Employee Benefit Rights (29 U.S.C. § 1140)**

26. Petitioners re-allege and incorporate by reference all allegations in paragraphs 1 through 19 above.

27. At the time of his termination, Petitioners were participants in employee benefit plans provided by Defendants, including but not limited to a group health insurance plan and a 401(k) retirement plan – each of which is an "employee benefit plan" within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002(3). Petitioners' employment provided them with rights and expectancies under these benefit plans (such as the right to continued health coverage, the right to employer contributions, and the right to vesting benefits with continued service).

28. Interference with Benefits: Defendants intentionally terminated Petitioners under circumstances that denied them benefits and interfered with their attainment of further benefits, in violation of ERISA § 510 (29 U.S.C. § 1140). ERISA § 510 states in relevant part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary … for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan". Defendants' conduct in abruptly discharging Petitioners had the purpose and effect of interfering with Petitioners' attainment of rights under Defendants' benefit plans. By laying off Petitioners without notice, Defendants avoided having to continue Petitioners' health insurance coverage and avoid paying their share of premiums or claims for the period they would have owed under WARN. Defendants also interfered with Petitioners' ability to exercise their right to continued health coverage and cut short their opportunity to continue accruing service time toward any additional benefits or vesting in Defendants' retirement contributions.

29. Upon information and belief, Defendants chose the timing and method of the mass layoff to reduce costs associated with employee benefits – effectively prioritizing their finances over compliance with benefit plan obligations. To the extent Defendants terminated employees, including Petitioners, *to prevent* them from obtaining benefits, such as avoiding an upcoming health insurance renewal or vesting milestone, such action squarely violates ERISA § 510's prohibition on discharges motivated by interfering with benefit rights.

30. As a direct result of Defendants' actions, Petitioners have suffered the loss of ERISA-protected benefits. Petitioners lost employer-sponsored health coverage and could not continue it in a timely manner, causing potential uninsured medical expenses. Petitioners lost the opportunity to receive ongoing employer contributions to their 401(k) plan and any other welfare or pension benefits that would have accrued or vested during continued employment or WARN notice period. Petitioners also suffered other incidental losses connected to the loss of their ERISA benefits.

31. Relief Requested (ERISA § 510): Pursuant to 29 U.S.C. § 1132(a)(3) and (a)(1)(B), which are made applicable to § 510 violations by 29 U.S.C. § 1140. Petitioners are entitled to appropriate equitable relief and to recover benefits due to them. Petitioners seek an order reinstating them into Defendants' health insurance plan retroactive to the date of termination or reimbursing them for the cost of obtaining equivalent health insurance coverage or medical expenses incurred due to lack of coverage, and enforcing their rights under the retirement plan (including crediting them with service and contributions for the period they would have remained employed absent Defendants' interference). Petitioners also seek any other make-whole relief available under ERISA, including lost benefits, restitution, or surcharge to compensate for the lost value of benefits. Additionally, Petitioners seek attorney's fees and costs under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g), as Defendants' actions have made it necessary for Petitioners to retain counsel to enforce their benefit rights.

**Third Cause of Action: Violation of COBRA Notice and Continuation Coverage Requirements (29 U.S.C. §§ 1161–1166)**

32. Petitioners re-allege and incorporate by reference all allegations in paragraphs 1 through 19 above.

33. COBRA Background: Petitioners' termination on August 24, 2025, was a qualifying event under COBRA (Consolidated Omnibus Budget Reconciliation Act of 1985, as amended) that caused Petitioners (covered employees under Defendants' group health plan) to lose coverage under that plan. Under COBRA, which is part of ERISA, an employee who loses health coverage due to a qualifying event, such as termination of employment other than for gross misconduct, has the right to elect continued group health plan coverage for a specified period (generally up to 18 months) by paying the premium. The law requires both the availability of continuation coverage and a timely notice to the

affected employee explaining the right to continue coverage. Specifically, 29 U.S.C. § 1161(a) mandates that "The plan sponsor of each group health plan shall provide … that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." Additionally, 29 U.S.C. § 1166 requires that the plan administrator notify each qualified beneficiary of their COBRA continuation rights within 14 days after the administrator is informed of the qualifying event.

34. Failure to Provide COBRA Notice: Defendants (and/or the administrator of their health plan) failed to promptly provide Petitioners with the required COBRA election notice. Petitioners never received written notice within the statutory notification period informing them that their group health coverage could be continued, the procedures for electing continuation, the due dates for election and premium payments, etc. Defendants were obligated to notify their plan administrator of Petitioners' termination within 30 days (29 U.S.C. § 1166(a)(2)), and the administrator then had 14 days to provide COBRA notice to Petitioners (29 U.S.C. § 1166(c)). Any notice that may have been provided was woefully late and deficient. By failing to send a timely and adequate COBRA notice, Defendants deprived Petitioners of their ability to make an informed decision to continue their health insurance coverage.

35. Failure to Offer Continuation Coverage: Because Petitioners were not notified of their COBRA rights and were not allowed to elect continuation coverage, Defendants failed to provide them with the continuation coverage to which they were entitled. Had they been properly informed, the petitioners would have been ready and willing to pay the premiums to continue his health insurance after termination. Instead, Petitioners were left uninsured or forced to obtain alternative insurance at significantly higher cost due to Defendants' statutory violations.

36. Damages and Penalties: As a direct result of Defendants' COBRA notice failure, Petitioners suffered damages, including loss of insurance coverage and exposure to medical costs. Petitioners had to forego or pay out-of-pocket for medical care that would have been covered under the employer's plan, and/or incur costs to secure interim insurance. In addition to compensatory damages, Petitioners seek statutory penalties as provided by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). Under that section, a plan administrator's failure to provide required COBRA notices can result in a penalty of up to $110 per day for each day of non-compliance per qualified beneficiary. Petitioners

request that the Court impose appropriate statutory penalties for the period of Defendants' failure to notify, as an incentive for compliance and to redress the violation. Petitioners also seek attorney's fees and costs under 29 U.S.C. § 1132(g) for this cause of action.

37. Equitable Relief: Alternatively or additionally, Petitioners seek equitable relief under 29 U.S.C. § 1132(a)(3) to remedy the COBRA violations. This may include an order of injunction or mandamus requiring Defendants to provide Petitioners with the COBRA notice and an extended opportunity to elect continuation coverage, or an order equitably estopping Defendants from denying coverage to Petitioners, such as by requiring them to pay Petitioner's medical expenses as if COBRA coverage were in place, as well as other appropriate equitable relief to put Petitioners in the position they would have been had Defendants complied with COBRA.

**Fourth Cause of Action: Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. R.S. 51:1401 *et seq.*)**

38. Petitioners re-allege and incorporate by reference all allegations in paragraphs 1 through 19 above.

39. Unfair and Deceptive Acts: Defendants engaged in unfair and deceptive acts and practices in trade or commerce, violating the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 *et seq.*, commonly known as LUTPA. Louisiana Revised Statute 51:1405(A) declares unlawful "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce". Defendants' conduct as described herein was unfair, deceptive, and unethical, and it was committed in the course of Defendants' trade or business. Specifically, Defendants misled and deceived their employees (including Petitioners) by concealing the impending mass layoff and failing to give required warnings, all while inducing employees to continue working up to the last minute. Defendants knew their financial condition was precarious and that layoffs were likely, yet they provided employees false reassurance or no information, abruptly terminating them without notice. This deceptive silence and ambush termination strategy prevented Petitioners from taking steps to protect themselves (such as seeking other employment sooner or saving money in anticipation of job loss). Moreover, Defendants' refusal to pay Petitioners' earned wages and benefits is unscrupulous and substantially injurious to Petitioners, giving Defendants an unfair cost advantage at the expense of employees. Such conduct offends established public policy,

which requires honest treatment of employees and prompt payment of wages, and is immoral, unethical, and unscrupulous.

40. Ascertainable Loss: Due to Defendants' unfair and deceptive acts, Petitioners suffered ascertainable losses of money and property. Petitioners lost earned income (wages, commissions) that Defendants unlawfully withheld. They lost the value of benefits (insurance coverage, etc.) that Defendants effectively took away through their deceptive and unlawful practices. Petitioners' monetary losses are concrete and calculable – including two months of pay, the dollar value of unused vacation days and commissions, and costs related to loss of benefits. Petitioners also suffered non-economic harm (emotional distress) as described, although LUTPA primarily focuses on economic injury. Petitioners' lost wages and benefits constitute an ascertainable loss of money or movable property under LUTPA.

41. Knowing Violation: Defendants' unfair/deceptive practices were committed knowingly and willfully. Defendants were well aware that failing to give notice and failing to pay wages was unlawful, yet chose to do so to preserve their own financial interests. Despite having actual or constructive notice from the law (and likely prior warning from counsel or public authorities) that such conduct was prohibited, Defendants knowingly inflicted losses on Petitioners. Petitioners allege that Defendants have been put on notice by the Attorney General or will be so notified of Petitioners' LUTPA claims (Petitioners, through counsel, mailed a copy of this Petition to the Louisiana Attorney General as required by La. R.S. 51:1409(B). Even without prior specific notice to Defendants from the Attorney General, the egregious and intentional nature of Defendants' conduct warrants heightened damages under LUTPA.

42. Relief under LUTPA: Pursuant to La. R.S. 51:1409(A), Petitioners, as persons who suffered ascertainable loss due to Defendants' methods, acts, and practices declared unlawful by R.S. 51:1405, "may bring an action individually … to recover actual damages.". Petitioners seeks actual damages in the amount of their economic losses, including all wages, commissions, vacation pay, benefits, and other sums that Defendants unfairly denied them, as well as compensation for the mental anguish and inconvenience caused by Defendants' actions (to the extent mental anguish damages are recoverable under LUTPA as actual damages, Petitioners assert that they should be, especially since Defendants' conduct was intentional). Petitioners further prays for an award of reasonable

attorney fees and costs, as mandated by R.S. 51:1409(A) ("the court shall award … reasonable attorney fees and costs" to a prevailing plaintiff).

43. Because the Defendants' acts were knowingly used and persisted despite their egregious nature, the Petitioners are entitled under LUTPA to treble damages. Louisiana R.S. 51:1409(A) states, *"If the court finds the unfair or deceptive … act or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained."*. Given the willfulness of Defendants' misconduct, Petitioners request that any actual damage award be trebled to punish Defendants and deter such conduct. Even if treble damages were not awarded, Petitioners are at least entitled to full compensatory damages and attorney fees for Defendants' LUTPA violations.

44. Petitioners also seek all other relief available under LUTPA, including pre-judgment interest on their damages, and any equitable relief, such as an injunction against Defendants from engaging in similar practices in the future. However, Defendants have largely ceased operations.

**Fifth Cause of Action: Failure to Pay Wages Due at Discharge (La. R.S. 23:631) and Penalty Wages (La. R.S. 23:632)**

45. Petitioners re-allege and incorporate by reference all allegations in paragraphs 1 through 19 above.

46. Louisiana Final Wage Law: Defendants violated Louisiana's final wage payment laws by failing to pay Petitioners' earned compensation promptly after termination. Louisiana Revised Statute 23:631(A)(1)(a) imposes a clear duty that upon discharge of an employee, "it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment … on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first." Defendants did not pay Petitioners the "amount then due" to them within the required timeframe after their August 24, 2025 discharge.

47. The "amount then due" to Petitioners at the time of his termination included multiple components, all of which fall under the scope of La. R.S. 23:631:

a. Regular wages for all hours/days Petitioners worked until August 24, 2025. These wages were due by the next payday or 15 days after discharge, and Defendants' failure to pay them is a direct violation of R.S. 23:631(A).

b. Earned commissions and other incentive compensation that Petitioners had earned before separation. Louisiana R.S. 23:631(E)(1) provides that commission or bonus compensation shall be considered due at separation if, "at the time of separation, the compensation has been earned" (and not modified by a written policy). Petitioners' commissions were fully earned – the sales were completed and any conditions satisfied – and no written policy lawfully negated their right to those commissions at termination. Accordingly, Petitioners' unpaid commissions are "wages" that should have been paid by the deadline. Defendants' failure to pay them constitutes a further breach of R.S. 23:631.

c. Any other earned compensation (such as expense reimbursements or vested bonuses) due under Petitioners' employment terms.

48. Petitioners made an amicable demand for the above amounts, but Defendants failed to pay. Under La. R.S. 23:632, Defendants are liable for penalty wages and attorney fees due to this non-payment. R.S. 23:632 states: "Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due, whichever is the lesser amount of penalty wages." In addition, the statute mandates that "Reasonable attorney fees shall be allowed the laborer or employee by the court… in the event a well-founded suit for any unpaid wages whatsoever be filed."

49. Defendants have failed to pay Petitioners' wages due (wages, commissions) without lawful cause. Since Petitioner's discharge, their demands for payment have gone unanswered by Defendants, who have not paid what is owed. There is no good-faith dispute over the amount due that would excuse non-payment – Petitioners' entitlement to their earned wages is clear. Therefore, penalty wages should be assessed. Petitioners are entitled to ninety (90) days of wages at their daily rate (or wages from the date of demand until payment, if shorter) as a penalty under R.S. 23:632. Petitioners' daily wage rate can be calculated from their last pay rate. Petitioners assert that the maximum 90-day penalty

is applicable given Defendants' complete failure to pay and the absence of any legitimate dispute.

50. Petitioners also request an award of reasonable attorney's fees and court costs against Defendants, as required by R.S. 23:632, because Petitioners' suit for unpaid wages is well-founded. Petitioners had to hire attorneys and incur expenses to recover what was clearly owed to them, and the law mandates shifting those fees to the employer in these circumstances. Petitioners pray that after due proceedings, the Court will award penalty wages and attorney fees in the amounts provided by law.

51. In addition to the statutory penalty, Petitioners seek judicial interest on all sums found to be due, from the date of judicial demand until paid, as provided by law, for this cause of action and all others in this Petition.

**<u>Sixth Cause of Action: Intentional Infliction of Emotional Distress</u>**

52. Petitioners re-allege and incorporate by reference all allegations in paragraphs 1 through 19 above.

53. Extreme and Outrageous Conduct: Defendants' actions and omissions concerning the mass layoff constituted extreme and outrageous conduct that caused Petitioners severe emotional distress. Under Louisiana law, the tort of intentional infliction of emotional distress (IIED) occurs when "(1) the defendant's conduct is extreme and outrageous; (2) the conduct causes severe emotional distress; and (3) the defendant intended to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result." All three elements are satisfied here.

54. Nature of Defendants' Conduct: Defendants' conduct was extreme and utterly intolerable in a civilized community. Defendants callously ordered the immediate termination of hundreds of employees, including Petitioners, without advance notice, knowing this would leave those employees and their families in an abrupt crisis. Defendants compounded this cruelty by withholding earned wages and benefits, effectively kicking employees while they were down. Such blatant disregard for the law and basic decency in the employer-employee relationship goes beyond mere illegality – it is outrageous. Every employer may have to terminate employees occasionally, but doing so in this egregious manner (mass layoffs with zero notice and zero post-termination support or payment) exceeds all bounds of decency. Defendants acted in a manner that society would consider

atrocious and utterly intolerable, especially given the vulnerability of employees who depend on their paychecks.

55. Intent or Reckless Disregard: Defendants intended to inflict emotional distress, or at least acted with reckless disregard of the near certainty of causing distress. Defendants knew that suddenly firing someone without notice or final pay would likely cause that person severe stress, anxiety, and emotional upheaval. It is well known that job loss ranks among the most stressful life events, and Defendants were aware that many employees, including Petitioners, had families, financial obligations, and an expectation of continued employment. By proceeding as they did – abruptly and unlawfully – Defendants either desired to bring about emotional turmoil (to, for example, pressure employees not to fight back or simply out of indifference), or they were consciously indifferent to the high probability of severe distress. In either case, the element of intent is met. Defendants' acts were not mere inadvertence or a normal termination; they were a deliberate business decision executed in a manner that any reasonable person would recognize as causing profound emotional upset.

56. Severe Emotional Distress: Petitioners have indeed suffered severe emotional distress as a direct result of Defendants' conduct. Petitioners' distress is not trivial or short-lived; it is of such gravity that no reasonable person could be expected to endure it. Upon being terminated without warning, Petitioners experienced shock, panic, and humiliation. In the ensuing days and weeks, Petitioners suffered anxiety attacks, depression, loss of sleep, and extreme concern about their family's financial survival. The betrayal Petitioners felt – having worked dutifully only to be discarded unlawfully – led to feelings of hopelessness and anger. Petitioners have had difficulty eating and sleeping, have experienced persistent fear about the future, and have required mental health support to cope with the trauma. This level of distress is severe by any measure and was directly caused by Defendants' outrageous actions.

57. No Workers' Compensation Bar: Petitioner's emotional distress damages are not barred by the Louisiana Workers' Compensation Act because Defendants' conduct was intentional. Louisiana's workers' comp exclusivity does not extend to intentional torts. Here, the distress was caused by deliberate acts or omissions by Defendants, taken with knowledge of likely harm. Thus, Petitioner may bring this intentional tort claim in civil court.

58. Relief for IIED: Petitioners seek full damages for Intentional Infliction of Emotional Distress. This includes general damages for the mental pain and suffering, emotional anguish, humiliation, and loss of enjoyment of life that the Petitioners have endured. Petitioners also seek any special damages that may be proved, such as costs of therapy or counseling necessitated by Defendants' actions. Petitioners pray for an award that will fairly compensate their emotional injuries. Additionally, because Defendants' conduct was malicious and outrageous, Petitioners ask the Court to consider awarding punitive/exemplary damages to the extent permitted by law (Petitioners acknowledge that Louisiana law does not generally allow punitive damages except where authorized by statute, but to the extent any aspect of Defendants' conduct falls under a federal law that allows liquidated or punitive damages – e.g., WARN Act liquidated damages or LUTPA treble damages – those are addressed in the respective claims). In any event, an IIED claim primarily supports recovery of the serious emotional harm inflicted, and Petitioners seek such recovery here.

**Jury Demand**

59. Trial by Jury: Petitioners request a trial by jury on all issues triable by a jury.

**Prayer for Relief**

WHEREFORE, Petitioners pray that after due proceedings, there be judgment rendered in their favor and against Defendants, PosiGen Developer, LLC, PosiGen of LA, LLC, and PosiGen, PBC, jointly, severally, and in solido, for all such sums as are just and reasonable under the circumstances, including but not limited to:

- Back Pay and Benefits (WARN Act damages): An amount equal to 60 days of pay at Petitioners' final rate of pay, plus the value of benefits (including medical insurance, 401(k) contributions, and other employee benefits) for those 60 days, as allowed by 29 U.S.C. § 2104;
- Unpaid Wages and Compensation: All unpaid wages, salary, commissions, and other compensation due to Petitioners under La. R.S. 23:631, in an amount to be proven at trial representing Petitioners' earnings and benefits up to the date of termination that were not paid;
- Penalty Wages: Penalty wages pursuant to La. R.S. 23:632 in the amount of ninety (90) days of Petitioners' salaries or wages for each day from Petitioners' demand for payment

until full payment is made, whichever is less, due to Defendants' willful failure to pay wages timely, plus reasonable attorney's fees and costs as mandated by law;

- Lost Benefits / ERISA Relief: All losses incurred by Petitioners in connection with Defendants' ERISA violations, including (but not limited to) the value of lost or denied health insurance benefits and retirement contributions. This includes reimbursement or payment of medical expenses that would have been covered had Petitioners' insurance continued, and restoration of any lost retirement account benefits. The Court is also requested to order appropriate equitable relief, such as an injunction or declaratory order, to reinstate Petitioners' coverage or otherwise place Petitioners in the position they would have been in absent Defendants' interference with their benefit rights and COBRA violations;
- COBRA Statutory Penalties: An award of statutory penalties under 29 U.S.C. § 1132(c) for each day of Defendants' failure to provide timely COBRA notice, at the maximum rate allowed by law (up to $110 per day), from the date notice was required until the date notice was ultimately provided (or until judgment herein), as determined by the Court to be just;
- Emotional Distress Damages: Appropriate general damages for emotional distress, mental anguish, embarrassment, and suffering that Petitioner endured due to Defendants' unlawful conduct, including but not limited to the distress caused by the sudden termination and Defendants' outrageous treatment;
- LUTPA Damages and Trebling: All actual damages sustained by Petitioners due to Defendants' unfair and deceptive acts, including the economic losses enumerated above and any other incidental or consequential damages. If the evidence shows Defendants' conduct was knowingly used after notice by the Attorney General, Petitioners prays for treble damages (three times actual damages) in accordance with La. R.S. 51:1409(A). Whether or not trebled, Petitioner also prays for an award of reasonable attorney's fees and costs under LUTPA;
- Attorneys' Fees: An award of attorneys' fees and litigation costs incurred by Petitioners in pursuing this action, as provided by multiple applicable laws: e.g., 29 U.S.C. § 2104(a)(6) (WARN Act), 29 U.S.C. § 1132(g)(1) (ERISA), La. R.S. 51:1409(A) (LUTPA), and La. R.S. 23:632 (wage claim). Petitioners should be awarded full reimbursement of their reasonable attorneys' fees and all costs of these proceedings;

- Judicial Interest: Legal interest on all amounts awarded, from the date of demand and/or judicial demand until paid, as allowed by law (including La. C.C.P. art. 1921 and La. R.S. 13:4202 for state law claims, and any applicable federal interest provisions for federal claims);
- Equitable Relief: Any appropriate equitable relief necessary to fully remedy Defendants' wrongs, such as reinstatement of Petitioners for purposes of benefit eligibility, an accounting or constructive trust upon any funds wrongfully withheld, and injunctive relief to prevent Defendants from engaging in similar unlawful employment practices in the future (noting that Defendants' business may be largely ceased, but to the extent any operations continue or resume, they should be enjoined from future WARN Act violations and wage law violations);
- Punitive/Exemplary Damages if Available: To the extent permitted by any applicable law or statute, an award of punitive or exemplary damages to punish Defendants for malicious and gross misconduct and to deter such conduct (for example, LUTPA's treble damages serve a punitive purpose, and any other statute or common law that would allow punitive damages in connection with the findings in this case should be applied);
- All General and Equitable Relief: All other general, equitable, and legal relief to which Petitioners are entitled or that the Court deems proper, whether specifically prayed for herein or not, including but not limited to the relief provided by 29 U.S.C. § 2105 (which notes that WARN Act remedies are in addition to other rights), and any relief necessary to ensure Petitioner is made whole.

Petitioners further pray that Defendants be cited to appear and answer this Petition, and that after due proceedings, and trial by jury, there be judgment in favor of Petitioners and against both Defendants, jointly and in solido, for all the amounts and relief listed above, together with interest and costs, and for such other and further relief as the interests of justice may require.

Respectfully submitted,

______________________________

Donald C. Hodge, Jr. (LSB# 29251)
Box 481
Westminster, CO 80036
Email: attorneydonaldhodge@gmail.com
Phone: 225-800-7124
Fax: 888-297-2959